# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARGARET HARRIS,

        Plaintiff,

v.

ALIERA HEALTHCARE, INC., *now known as* THE ALIERA COMPANIES, INC.,

        Defendant.

Case No. 20-CV-492-JPS

**ORDER**

### 1.    BACKGROUND

On February 27, 2020, Plaintiff filed a civil action in state court against Defendant.[1] About one month later, Defendant filed a notice of removal, and this action was assigned to this branch of the Court. (Docket #1). Defendant subsequently filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, to compel arbitration. (Docket #4). For the reasons stated below, the Court grants Defendant's motion to compel arbitration, in part, and will compel Plaintiff to arbitrate her claims. Therefore, the Court will also deny Defendant's alternative motion to dismiss pursuant to Rule 12(b)(3). Lastly, the Court will dismiss this case without prejudice.

### 2.    FACTS

In her complaint, Plaintiff alleges that she purchased "comprehensive healthcare insurance" from Defendant and paid

---

[1] *Harris v. Aliera Healthcare, Inc.*, 2020CV001602 (Milw. Cnty. Cir. Ct.) *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2020CV001602&countyNo=40 (last visited Feb. 23, 2021).

Defendant for the same. (Docket #1-3 at 6). Plaintiff claims that the policy covered Plaintiff and her immediate family from May 15, 2018 through May 15, 2019. (*Id.*) However, on June 26, 2019, Defendant cancelled Plaintiff's policy and backdated the cancellation to May 14, 2019. (*Id.*) According to Plaintiff, Defendant failed to provide her with proper notice of the cancellation, in violation of state law. (*Id.*) Plaintiff claims that, due to Defendant's failure to provide such notice, her policy was "automatically renewed" through May 15, 2020. (*Id*. at 7).

Plaintiff alleges that, while insured by Defendant, she incurred medical expenses in the amount of $139,662.86, and that such expenses were covered under Plaintiff's policy. According to Plaintiff, those expenses continue to accrue. (*Id.*) After Defendant denied Plaintiff's claims for such expenses, due to Plaintiff's alleged lapse in coverage, Plaintiff, via counsel, sent Defendant a demand letter. (*Id.* at 8, 11–12).[2] Plaintiff avers that, due to Defendant's termination of Plaintiff's policy without notice and its denial of her claims, Defendant (1) violated Wisconsin Statutes section 806.04, for which Plaintiff seeks a declaratory judgment; (2) breached a contract with Plaintiff; and (3) acted in bad faith. Plaintiff also seeks punitive damages under state law. (*See id.* at 7–10).

Defendant provides a different rendition of the facts, via both its brief and the sworn declaration of its Director of Risk and Compliance. (*See* Docket #4, #4-1). According to Defendant, Plaintiff never directly purchased

---

[2] In her complaint, Plaintiff refers to the policy as the contract. (*See* Docket #1-3 at 8) ("The Defendant has breached the contract by failing to fully pay the Plaintiff all amounts owed under the policy."); (*See also id.*) ("The Defendant has breached the contract by terminating the Policy without providing timely notice of cancellation to the Plaintiff.") Notably, Plaintiff does not cite to, nor provide a copy of, any relevant policy documents, either in her initial complaint or with her response to Defendant's motion to compel arbitration.

insurance from Defendant, but instead purchased a non-insurance product called "AlieraCare." By purchasing AlieraCare, Plaintiff became a member of Unity HealthShare, LLC ("Unity"). (Docket #4-1 at 2–5). Defendant reiterates that Unity is not insurance, but rather a healthcare sharing ministry ("HCSM"). (*Id.* at 2–3). Defendant avers that it was the administrator of Unity's HCSM product, AlieraCare, and sold it to Plaintiff. (*Id.* at 2–3). According to Defendant's records, Plaintiff joined Unity's HCSM on May 15, 2018. (*Id.* at 5). Upon joining, Unity provided Plaintiff with a membership guide, (*see* Docket #4-2). Plaintiff affirmed that she understood the Unity guidelines (i.e., the membership guide) via a recorded phone call. (Docket #4-1 at 5). Defendant avers that Plaintiff also affirmed her understanding that those guidelines applied to her requests for payment for medical services. (*Id.*)

Defendant states that, in April 2019, Plaintiff notified Defendant that she was terminating her Unity HCSM membership, and she confirmed this cancellation in May. (*Id.*) But, in July 2019, Plaintiff enrolled in a separate HCSM product, Trinity HealthShare, Inc. ("Trinity"). (*Id.*) Defendant provided services related to the operation and administration of Trinity's HCSM. (*Id.* at 3). Trinity also provided Plaintiff with a membership guide, to which Plaintiff affirmed her acceptance. (*Id.* at 7). As of the date of Defendant's motion, Plaintiff remained a member of Trinity HCSM and continued to make regular contributions thereto. (*Id.*).

Plaintiff does not specify when she received, and was denied payment for, allegedly covered medical services.[3] Regardless, Defendant

---

[3]In her complaint, Plaintiff also claims that Defendant breached its contract with her when it wrongfully terminated her policy on June 26, 2019, without providing notice to Plaintiff and causing a lapse in her coverage. (Docket #1-3 at

argues that if Plaintiff's claim for coverage accrued while she was a member of Unity, Plaintiff and Defendant (as Unity's administrator) would be bound by the dispute resolution and appeal process in Unity's membership guide. The final steps of that process are "Mediation and Arbitration," which provide as follows:

> Mediation and Arbitration. If the aggrieved sharing member disagrees with the conclusion of the Final Appeal Panel, then the matter shall be settled by mediation and, if necessary, legally binding arbitration in accordance with the Rules of Procedure for Christian Conciliation of the Institute for Christian Conciliation, a division of Peacemaker Ministries. Judgment upon an arbitration decision may be entered in any court otherwise having jurisdiction. Sharing members agree and understand that these methods shall be the sole remedy for any controversy or claim arising out of the Sharing Guidelines and expressly waive their right to file a lawsuit in any civil court against one another for such disputes, except to enforce an arbitration decision. Any such arbitration shall be held in Fredericksburg, Virginia, subject to the laws of the Commonwealth of Virginia. Unity HealthShareSM shall pay the fees of the arbitrator in full and all other expenses of the arbitration; provided, however, that each party shall pay for and bear the cost of its own transportation, accommodations, experts, evidence, and legal counsel, and provided further that the aggrieved sharing member shall reimburse the full cost of arbitration should the arbitrator determine in favor of Unity HealthShareSM and not the aggrieved sharing member. The aggrieved sharing member agrees to be legally bound by the arbitrator's decision. The Rules of Procedure for Christian Conciliation of the Institute for Christian Conciliation, a division of Peacemaker Ministries, will be the

---

8). Based on this allegation alone, it appears that Plaintiff's termination-of-coverage-based grievance would fall under the purview of the Unity dispute resolution policy. However, Plaintiff alleges that under Wisconsin law, her policy renewed through May 15, 2020. Therefore, it is unclear which contact governed Plaintiff and Defendant's relationship at or around the time of Defendant's allegedly unlawful termination of Plaintiff's policy.

Page 4 of 14
Case 2:20-cv-00492-JPS   Filed 02/26/21   Page 4 of 14   Document 9

> sole and exclusive procedure for resolving any dispute between individual members and Unity HealthShareSM when disputes cannot be otherwise settled.

(Docket # 4-2 at 18). Alternatively, if Trinity unlawfully denied Plaintiff's claim, or if Defendant (as Trinity's administrator) was somehow responsible for that denial, then Plaintiff would be bound by the "Dispute Resolution and Appeal" process in Trinity's membership guide. (*See* Docket #4-3 at 36–37). Like Unity's process, the last steps are "Mediation and Arbitration," as explained below:

> Mediation and Arbitration. If the aggrieved sharing member disagrees with the conclusion of the Final Appeal Panel, then the matter shall be resolved by first submitting the disputed matter to mediation. If the dispute is not resolved the matter will be submitted to legally binding arbitration in accordance with the Rules and Procedure of the American Arbitration Association. Sharing members agree and understand that these methods shall be the sole remedy to resolve any controversy or claim arising out of the Sharing Guidelines, and expressly waive their right to file a lawsuit in any civil court against one another for such disputes; except to enforce an arbitration decision. Any arbitration shall be held in Atlanta, Georgia, and conducted in the English language subject to the laws of the State of Georgia. Trinity HealthShare shall pay the filing fees for the arbitration and arbitrator in full at the time of filing. All other expenses of the arbitration shall be paid by each party including costs related to transportation, accommodations, experts, evidence gathering, and legal counsel. Further agreed that the aggrieved sharing member shall reimburse the full costs associated with the arbitration, should the arbitrator render a judgment in favor of Trinity HealthShare and not the aggrieved sharing member. The aggrieved sharing member agrees to be legally bound by the arbitrator's final decision. The parties may alternatively elect to use other professional arbitration services available in the Atlanta metropolitan area, by mutual agreement.

(Docket #4-3 at 37). As discussed, *supra*, Plaintiff did not follow either Unity's or Trinity's dispute resolution procedures. It is against this factual backdrop that the Court determines whether Plaintiff is bound to arbitrate her dispute against Defendant.

3.  **LEGAL STANDARD**

Pursuant to the Federal Arbitration Act:

> "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. Thus, a federal district court must compel arbitration where: (1) a valid agreement to arbitrate exists; (2) the dispute falls within the scope of that agreement; and (3) a party has refused to proceed to arbitration in accordance with the arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). Yet, "because arbitration is a matter of contract, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain trial on the merits of the contract." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (citing 9 U.S.C. § 4). In other words, the opposing party must demonstrate that a genuine issue of material fact warranting trial exists. *Id.* The opposing party must do this by "identify[ing] specific evidence in the record demonstrating a material

factual dispute for trial." *Id.* (citing *Oppenheimer & Co. v. Neidhart*, 56 F.3d 352, 358 (2d Cir. 1995)).

## 4. ANALYSIS

### 4.1 Existence of Valid Agreement

Defendant argues that both Unity's and Trinity's membership guides contain valid, binding arbitration agreements. Specifically, by being a Unity HCSM member, Plaintiff agreed "that any dispute [Plaintiff] ha[s] with or against Unity HealthShareSM, its associates, or employees" will be settled via a multi-level appeal process, the last step of which is arbitration. (Docket #4-2 at 18). Likewise, by enrolling in Trinity HCSM, Plaintiff agreed "that any dispute [Plaintiff] ha[s]with or against Trinity HealthShare [sic] its associates, or employees will be settled" using a multi-level appeal process, that ends with arbitration. (Docket #4-3 at 36–37).

Plaintiff's response insinuates, with little to no explanation, that the aforementioned membership guides are invalid. (*See, e.g.*, Docket #6 at 4) ("The Defendant claims that the 'contract' between it and the Plaintiff is manifested in two documents: the 'Unity Membership Guide' and the 'Trinity Membership Guide'"); (*see also id.* at 6) ("The language of this purported contract is clear that a dispute on the necessity of medical treatment or cost of medical treatment **may** be subject to arbitration.") (emphasis in original).

Plaintiff's only substantive argument challenging the validity of the membership guides as contracts between Plaintiff and Defendant[4] is that it

---

[4]Plaintiff does not challenge Defendant's assertion that Defendant, although a non-signatory, is an associate and agent of both Unity and Trinity, and thus, is able to invoke their respective dispute resolution processes and arbitration clauses.

is *one* contract[5] containing contradictory provisions. According to Plaintiff, the presence of such contradictory terms confirms that there never could have been a "meeting of the minds." (*Id.* at 6). Plaintiff points to Unity's membership guide, which requires arbitration in Fredericksburg, Virginia, subject to Virginia law, before the Christian Conciliation of the Institute for Christian Conciliation. Plaintiff avers that this is contradictory to Trinity's membership guide, which provides for arbitration before the American Arbitration Association ("AAA"), to be held in Atlanta, Georgia and subject to Georgia law.

Plaintiff conflates two separate contracts which cover two distinct periods of time. Plaintiff was a member of Unity's HCSM from May 15, 2018 through May 2019 (or, perhaps, June 26, 2019), and during that time, the Plaintiff, Unity, and Defendant (as Unity's agent) would have been subject to the terms in the Unity membership guide. When Plaintiff joined Trinity in July 2019, Plaintiff's relationship with Trinity and Defendant, as Trinity's agent, would have been governed by the terms of Trinity's membership guide. Defendant does not suggest that Plaintiff was simultaneously a member of both Trinity and Unity, nor does Plaintiff make such allegations in her complaint. Thus, the terms of both membership guides were not in effect concurrently. In fact, Defendant mentions both policies out of

---

[5]Plaintiff's choice of words undercuts her arguments that (1) there is no contract between the parties and (2) the membership guides only make up one contract, not two, separate, contracts. (*See, e.g.*, Docket #6 at 5) ("To begin with, despite the requirement that the plain language of the contract must make clear what is subject to arbitration, *the contract* does no such thing. Rather the *membership guides* solely reference disputes related to medical care, treatment, or coverage.") (emphasis added); (*See also id.* at 3) ("There can be no argument that an arbitrator should decide the issues raised here because the dispute resolution portions of *the contracts* make **no reference** to the arbitrator deciding the arbitrability issues.") (first emphasis added, second emphasis in original).

Page 8 of 14
Case 2:20-cv-00492-JPS   Filed 02/26/21   Page 8 of 14   Document 9

necessity. *If* Plaintiff had specified *when* Defendant wrongfully denied her claim(s) or terminated her coverage, Defendant would not have needed to submit both arbitration clauses to the Court.

Plaintiff also asserts that the respective arbitration clauses force Plaintiff to forfeit her statutory rights under Wisconsin Statutes sections 806.04 and 895.043 and are, therefore, unenforceable. Specifically, Plaintiff claims that the language in Trinity's and Unity's arbitration clauses that make clear that members "expressly waive their right to file a lawsuit in civil court" violates section 806.04(9), which permits (but does not require) determinations of factual issues to be "tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." Plaintiff also claims that because Unity's and Trinity's arbitration clauses require Plaintiff to reimburse the Defendant's costs should the arbitrator find for Defendant, (*see* Docket #6 at 7), these provisions also require Plaintiff to forfeit her statutory right to costs under section 806.04(10)[6] and punitive damages under section 895.043(3).[7] Plaintiff relies on language from Judge Rovner's decision, concurring with the judgment in *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677 (7th Cir. 2002) (plurality). Therein, Judge Rovner stated that because a prevailing party's right to attorney's fees is "integral to the purposes of [Title VII]," an arbitration agreement that "preemptively denie[d] [the plaintiff's] remedies authorized by Title VII" was unenforceable. *Id.* at 684–85.

---

[6]"In any proceeding under this section the court may make such award of costs as may seem equitable and just."

[7]"The plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff."

Plaintiff's reliance on *McCaskill* is misplaced for several reasons. First, as another district court in this circuit has pointed out, "Judge Rovner's opinion advocating an automatic rule of unenforceability was hers alone," among a plurality, and thus, carries no precedential value. *Gillispie v. Vill. of Franklin Park*, 405 F. Supp. 2d 904, 911 (N.D. Ill. 2005). Second, this "automatic unenforceability rule" pertained specifically to a prevailing party's rights under a specific federal law, Title VII. Here, Plaintiff argues that, per *McCaskill*, Trinity's and Unity's arbitration clauses are void to the extent those provisions require Plaintiff to forfeit her *state* statutory rights.[8] The Court finds Plaintiff's *McCaskill*-based arguments

---

[8]Without ruling on this issue, the Court also finds it likely that the arbitration clauses at issue do not, in fact, foreclose Plaintiff from receiving punitive damages. As Defendant points out, both the AAA Rules and Rules of Procedure for Christian Conciliation ("RPCC") permit the arbitrator to determine any damages he or she deems "just and equitable." *See* Am. Arb. Ass'n, *Commercial Arbitration Rules and Mediation Procedures*, R-47(a), (effective October 1, 2013) *available at* https://www.adr.org/Rules [hereinafter *AAA Rules*] ("The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract."); *Handbook for Christian Conciliation*, Part III – Rules of Procedure for Christian Conciliation, Rule 40B., *available at* www.crossroadsresolution.com/wp-content/uploads/2019/04/Rules-of-Procedure-for-Christian-Conciliation.pdf (last visited Feb. 23, 2021) [hereinafter *RPCC Rules*] ("The arbitrators may grant any remedy that they deem scriptural, just and equitable, and within the scope of the agreement of the parties, including, but not limited to, specific performance of the contract."); *Winkelman v. Kraft Foods, Inc.*, 693 N.W.2d 756, 764 (Wis. Ct. App. 2005) (holding that, based on U.S. Supreme Court precedent in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 60–63 (1995), language in the AAA arbitration rules providing that an arbitrator "may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement" supports the conclusion that the parties authorized the arbitrator to award punitive damages). The Court is also not convinced that Plaintiff is entitled, under Wisconsin law, to an award of costs under section 806.04(10), which states that "the court *may* make such award of costs as may seem equitable and just." (emphasis added). Thus, Plaintiff would not be forfeiting a statutory right to costs. Similarly, because section 806.04(9) permits, but does not

inapplicable. There being no meritorious challenges to the validity of either Plaintiff's agreement with Unity or Trinity, the Court now determines whether Plaintiff's dispute falls within the scope of both agreements.

**4.2. Scope**

Defendant argues that the scopes of the respective arbitration clauses encompass the issue of arbitrability. It follows that *if* arbitrability is within the scopes of those clauses then the question of arbitrability should be put to the applicable arbitrator. However, Plaintiff believes that this Court must answer that question. To be sure, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 649 (1986) (citation omitted). *See also Allscripts Healthcare, LLC v. Entransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 701 (N.D. Ill. 2016) ("But that is just a presumption; the Supreme Court has held that a 'clear[ ] and unmistakabl[e]' agreement between the parties that the arbitrators will resolve disputes about arbitrability is as binding as any other arbitration agreement.") (citation omitted, alteration in original).

Plaintiff argues that the arbitration clauses lack explicit language delegating the decision of arbitrability to an arbitrator. (Docket #6 at 3). In reply, Defendant points to language in Unity's arbitration clause, which states that matters shall be settled, if necessary, via "legally binding arbitration in accordance with the Rules of Procedure for Christian Conciliation of the Institute for Christian Conciliation . . . ." (Docket #4-2 at 18). Similarly, Trinity's arbitration clause dictates that a dispute "will be

---

require, an issue of fact to be tried by a jury, it does not appear that Plaintiff is forfeiting a statutorily protected right to the same.

submitted in accordance with the Rules and Procedure of the American Arbitration Association." (Docket #4-3 at 37). Because the respective rules of both the RPCC[9] and the AAA[10] provide the arbitrator with the power to rule on his or her own jurisdiction, Defendant argues that the incorporation of such rules evidences the parties' clear and unmistakable intent to put the question of arbitrability to the arbitrator.

The Seventh Circuit has neither adopted nor rejected this approach. Yet, myriad federal circuit courts, as well as district courts in the Seventh Circuit, have held that by incorporating an arbitral body's rules into their agreement, "parties evidence their 'clear and unmistakable' intent to allow the arbitrator to decide the question of arbitrability." *Gilman v. Walters*, 61 F. Supp. 3d 794, 800 (S.D. Ind. 2014) (collecting cases); *see also Allscripts*, 188 F. Supp. 3d at 701 ("The court adopts the consensus view. By incorporating the AAA's Rules, the [agreement's] arbitration clause clearly and unmistakably delegates authority to the arbitrators to decide whether Allscript's claims are arbitrable."); *In re Dealer Mgmt. Sys. Antitrust Litig.*, Case Nos. 18-cv-864, 1:19-cv-1412, 2020 WL 832365, at *5 (N.D. Ill. Feb. 20, 2020) ("The Court finds that all three relevant contracts incorporate the AAA Rules, which, under the majority rule, constitutes 'clear and unmistakable' evidence that the parties intended the question of arbitrability to be decided by an arbitrator."); *Boehm v. Getty Images (US),*

---

[9]Pursuant to Rule 34B., "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *See RPCC Rules*, Rule 34B.

[10]Under R-7(a), "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See AAA Rules*, R-7(a).

Page 12 of 14
Case 2:20-cv-00492-JPS   Filed 02/26/21   Page 12 of 14   Document 9

*Inc.*, 16-cv-311-jdp, 2016 WL 6110058, at *3 (W.D. Wis. Oct. 19, 2016) ("Although the Seventh Circuit has yet to address the question, the consensus view is that reference to the AAA's Rules in an arbitration clause reserves threshold questions of arbitrability to the arbitrator.").

The Court adopts the majority rule and determines that, pursuant to both Unity's and Trinity's arbitration clauses, which incorporate the RPCC's and AAA's rules, respectively, the parties have clearly and unmistakably declared their intent that the issue of arbitrability must be decided by the arbitrator. In light of the foregoing, the Court will not address Plaintiff's argument that the nature of her dispute against Defendant is not contemplated in either Unity's or Trinity's arbitration clauses, (i.e., are outside the scope of those arbitration clauses).

### 4.3    Refusal to Submit to Arbitration

Because Plaintiff has refused to submit to arbitration, the Court must compel her to do so. Depending on *when* Plaintiff's claims accrued, either Unity's or Trinity's arbitration clause will dictate the applicable dispute resolution process and arbitrable body to which the parties must present themselves.

### 5.    CONCLUSION

The Court will deny as moot Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) and will grant Defendant's motion to compel arbitration, in part. (Docket #4). Although Defendant requests that the Court stay all proceedings in this matter pending conclusion of arbitration, at this juncture, the Court will dismiss Plaintiff's claims, without prejudice. Should Plaintiff persuade the arbitrator that the parties did not decide to arbitrate this matter, or that arbitration is not appropriate for some other reason, they may return to

court. Until then, Plaintiff is bound by the agreements she made with Unity and Trinity, and thus, Defendant, as an agent of the same.

Accordingly,

**IT IS ORDERED** that Defendant's motion to compel arbitration (Docket #4) be and the same is hereby **GRANTED in part**;

**IT IS FURTHER ORDERED** that Plaintiff is compelled to arbitrate her claims in this action with Defendant in accordance with the terms of the applicable membership guide;

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) (Docket #4) be and the same is hereby **DENIED as moot.**

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of February, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge